Liza M. Walsh
Katelyn O'Reilly
Christine P. Clark
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASTELLAS PHARMA INC.; ASTELLAS US LLC; ASTELLAS PHARMA US, INC.; MEDIVATION LLC; MEDIVATION PROSTATE THERAPEUTICS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DR. REDDY'S LABORATORIES, INC.; DR. REDDY'S LABORATORIES LIMITED, <br><br> Defendants. | Civil Action No. _____ |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Astellas Pharma Inc. ("API"), Astellas US LLC ("AUS"), and Astellas Pharma US, Inc. ("APUS") (collectively, "Astellas"), and Medivation LLC and Medivation Prostate Therapeutics LLC ("MPT") (collectively, "Medivation") (all collectively, "Plaintiffs"), for their Complaint against Defendants Dr. Reddy's Laboratories, Inc. ("DRL Inc.") and Dr. Reddy's Laboratories Limited ("DRL Ltd.") (collectively, "DRL"), hereby allege as follows:

**THE PARTIES**

1.      Plaintiff API is a corporation organized and existing under the laws of Japan having its principal place of business at 2-5-1, Nihonbashi-Honcho, Chuo-Ku, Tokyo 103-8411, Japan.

2.      Plaintiff AUS is a limited liability company organized and existing under the laws of the state of Delaware having its principal place of business at 2375 Waterview Drive, Northbrook, Illinois 60062, United States.

3.      Plaintiff APUS is a corporation organized and existing under the laws of the state of Delaware having its principal place of business at 2375 Waterview Drive, Northbrook, Illinois 60062, United States.

4.      Plaintiff Medivation LLC is a limited liability company organized and existing under the laws of the state of Delaware having its principal place of business at 66 Hudson Boulevard East, New York, New York 10001-2192, United States.

5.      Plaintiff MPT is a limited liability company organized and existing under the laws of the state of Delaware having its principal place of business at 66 Hudson Boulevard East, New York, New York 10001-2192, United States.

6.      On information and belief, Defendant DRL Inc. is a corporation organized and existing under the laws of the state of New Jersey having a principal place of business at 600 College Road East, Princeton, New Jersey 08540, United States.

7.      On information and belief, DRL Inc., by itself and/or through its affiliates and agents, is in the business of among other things, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the state of New Jersey and throughout the United States.

8.    On information and belief, Defendant DRL Ltd. is a corporation organized and existing under the laws of India having a principal place of business at 8-2-337, Road No. 3 Banjara Hills, Hyderabad, Telangana 500034, India.

9.    On information and belief, DRL Ltd., by itself and/or through its affiliates and agents, is in the business of among other things, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the state of New Jersey and throughout the United States.

10.    On information and belief, DRL Inc. is a wholly-owned subsidiary and the U.S. agent of DRL Ltd.

11.    On information and belief, DRL Inc. and DRL Ltd. are agents of each other with respect to the development, regulatory approval, marketing, sale, and/or distribution of generic products. On information and belief, the acts of DRL Inc. and DRL Ltd. complained of herein were done with the cooperation, participation, and assistance of, and at least in part, for the benefit of, each other.

12.    On information and belief, Defendants DRL Inc. and DRL Ltd. have cooperated and assisted in the preparation and filing of DRL's Abbreviated New Drug Application ("ANDA") No. 221187 and will be involved in the manufacture, importation, marketing, and sale of the drug that is the subject of ANDA No. 221187 if it is approved.

## NATURE OF THE ACTION

13.    This is a civil action for the infringement of United States Patent Nos. 11,839,689 ("the '689 patent"), 12,161,628 ("the '628 patent"), 12,502,357 ("the '357 patent"), and 12,447,128 ("the '128 patent") (collectively, the "Xtandi® patents") under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., arising from DRL's filing of ANDA No. 221187 with the

United States Food and Drug Administration ("FDA") seeking approval to market generic versions of the pharmaceutical products Xtandi® tablets, 40 and 80 mg, before the expiration of Plaintiffs' patents covering Xtandi® tablets and their use.

## **JURISDICTION AND VENUE**

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

15.     This Court has personal jurisdiction over DRL by virtue of the fact that, *inter alia*, DRL has committed the tortious act of patent infringement pursuant to 35 U.S.C. § 271(e)(2)(A) that has led to foreseeable harm and injury to Plaintiffs in the state of New Jersey and throughout the United States.

16.     This Court has personal jurisdiction over DRL by virtue of the fact that DRL is at home in New Jersey as reflected by the fact that, on information and belief, it regularly does or solicits business in New Jersey, engages in other persistent courses of conduct in New Jersey, and/or derives substantial revenue from services or things used or consumed in New Jersey, including by selling its pharmaceutical products in New Jersey and, therefore, DRL can reasonably expect to be subject to jurisdiction in the New Jersey courts. Among other things, on information and belief, DRL conducts marketing and sales activities in the state of New Jersey, including but not limited to, distribution, marketing, and sales of pharmaceutical products to New Jersey residents that are continuous and systematic. On information and belief, if DRL's ANDA No. 221187 is approved, DRL will market and sell its generic versions of Xtandi® tablets in New Jersey.

17.     This Court has personal jurisdiction over DRL Inc. On information and belief, DRL Inc. is incorporated in and regularly and continuously conducts business in New Jersey.

DRL Inc. has an active business entity status registered with the state of New Jersey under the business entity identification number 0100518911, an active permit as a drug manufacturer and distributor in the state of New Jersey under registration number 5002312, and a principal place of business at 600 College Road East, Princeton, New Jersey 08540.

18.    This Court also has personal jurisdiction over DRL Inc. and DRL Ltd. by virtue of the fact that each previously submitted to the jurisdiction of this Court and availed itself of this Court by consenting to this Court's jurisdiction and asserting counterclaims in civil actions initiated in this jurisdiction including, but not limited to, e.g., *Incyte Corp., et al. v. Dr. Reddy's Lab'ys, Inc., et al.*, No. 1:25-cv-17832 (D.N.J.); *Amgen Inc., et al. v. Dr. Reddy's Lab'ys Ltd., et al.*, No. 1:25-cv-17277 (D.N.J.); *Pharmacosmos A/S, et al. v. Dr. Reddy's Lab'ys, Inc., et al.*, No. 2:25-cv-03967 (D.N.J.); *Aurinia Pharms. Inc. v. Dr. Reddy's Lab'ys, Inc., et al.*, No. 2:25-cv-03693 (D.N.J.); *Impax Lab'ys, LLC v. Dr. Reddy's Lab'ys, Ltd., et al.*, No. 3:24-cv-07875 (D.N.J.); *American Regent, Inc. v. Dr. Reddy's Lab'ys, Inc., et al.*, No. 2:24-cv-07799 (D.N.J.); *Esperion Therapeutics, Inc. v. Dr. Reddy's Lab'ys Inc., et al.*, No. 2:24-cv-06391 (D.N.J.); and *Novo Nordisk Inc. v. Dr. Reddy's Lab'ys, Ltd., et al.*, No. 1:23-cv-22112 (D.N.J.). On information and belief, DRL Inc. and DRL Ltd. each previously submitted to the jurisdiction of this Court and availed itself of the legal protections of the state of New Jersey by having filed suit in this jurisdiction. *See, e.g.*, *Dr. Reddy's Lab'ys, Inc., et al. v. AstraZeneca AB, et al.*, No. 1:18-cv-16057 (D.N.J.); *Dr. Reddy's Laby's, Inc., et al. v. Purdue Pharm. Prods., LP, et al.*, No. 2:14-cv-03230 (D.N.J.); *Dr. Reddy's Lab'ys, Ltd., et al. v. Eli Lilly & Co.*, No. 3:09-cv-00192 (D.N.J.); and *Dr. Reddy's Lab'ys, Ltd., et al. v. AstraZeneca AB, et al.*, No. 3:08-cv-02496 (D.N.J.).

19.    Alternatively, assuming that the above facts do not establish personal jurisdiction over DRL Ltd., this Court may exercise jurisdiction over DRL Ltd. pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Plaintiffs' claims arise under federal law; (b) DRL Ltd. is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) DRL Ltd. has sufficient contacts with the United States as a whole, including but not limited to manufacturing and/or selling pharmaceutical products distributed throughout the United States, such that this Court's exercise of jurisdiction over DRL Ltd. satisfies due process.

20.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

21.    Venue is proper in this judicial district for DRL Inc. On information and belief, DRL Inc. is incorporated in, and therefore resides in, New Jersey. On information and belief, DRL Inc. has an active business entity status registered with the state of New Jersey under the business entity identification number 0100518911, an active permit as a drug manufacturer and distributor in the state of New Jersey under registration number 5002312, and a principal place of business at 600 College Road East, Princeton, New Jersey 08540. On information and belief, based on DRL Inc.'s presence in and connections to New Jersey, discoverable information in DRL Inc.'s possession, custody, or control regarding DRL's ANDA No. 221187 will likely show that DRL Inc. engaged in activities in New Jersey relevant to the preparation and/or submission of DRL's ANDA No. 221187.

22.    Venue is proper in this judicial district for DRL Ltd. because, among other things, DRL Ltd. is a foreign corporation not residing in any United States district and may be sued in any judicial district.

23.    Venue is further proper as to DRL because, among other things, DRL has committed, or aided, abetted, contributed to, and/or participated in the commission of acts of patent

infringement that will lead to foreseeable harm and injury to Plaintiffs, which manufacture Xtandi® for sale and use throughout the United States, including within the state of New Jersey.

## THE XTANDI® TABLET NDA

24.     APUS filed New Drug Application ("NDA") No. 213674 for Xtandi® (enzalutamide) tablets, 40 mg and 80 mg. The FDA approved NDA No. 213674 for Xtandi® 40 mg and 80 mg tablets on August 4, 2020, for the treatment of patients with castration-resistant prostate cancer and metastatic castration-sensitive prostate cancer. On November 16, 2023, the FDA approved an expanded indication for the use of Xtandi® 40 mg and 80 mg tablets to treat patients with non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis. Xtandi® tablets are sold and co-promoted by APUS and Pfizer Inc. in the United States.

25.     Enzalutamide is a compound that can be referred to by any of several chemical names, including 4-{3-[4-cyano-3-(trifluoromethyl)phenyl]-5,5-dimethyl-4-oxo-2-sulfanylideneimidazolidin-1-yl}-2-fluoro-N-methylbenzamide, 4-{3-(4-cyano-3-(trifluoromethyl)phenyl)-5,5-dimethyl-4-oxo-2-thioxoimidazolidin-1-yl}-2-fluoro-N-methylbenzamide, 4-[3-[4-cyano-3-(trifluoromethyl)phenyl]-4-keto-5,5-dimethyl-2-thioxo-imidazolidin-1-yl]-2-fluoro-N-methyl-benzamide, and 4-[3-[4-cyano-3-(trifluoromethyl)phenyl]-5,5-dimethyl-4-oxo-2-sulfanylidene-1-imidazolidinyl]-2-fluoro-N-methylbenzamide, and which has the following chemical structure:

**THE PATENTS-IN-SUIT**

26.     On December 12, 2023, the '689 patent, entitled "Formulations of Enzalutamide," was duly and legally issued to API and MPT. A true and correct copy of the '689 patent is attached hereto as Exhibit A.

27.     In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the '689 patent is listed in the FDA's Approved Drug Products with Therapeutic Equivalence Evaluations (also known as the "Orange Book") for Xtandi® 40 mg and 80 mg tablets.

28.     On December 10, 2024, the '628 patent, entitled "Combination Therapy," was duly and legally issued to API and MPT. A true and correct copy of the '628 patent is attached hereto as Exhibit B.

29.     In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the '628 patent is listed in the Orange Book for Xtandi® 40 mg and 80 mg tablets.

30.     On December 23, 2025, the '357 patent, entitled "Formulations of Enzalutamide," was duly and legally issued to API and MPT. A true and correct copy of the '357 patent is attached hereto as Exhibit C.

31.     In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the '357 patent is listed in the Orange Book for Xtandi® 40 mg and 80 mg tablets.

32.     On October 21, 2025, the '128 patent, entitled "Formulations of Enzalutamide," was duly and legally issued to API and MPT. A true and correct copy of the '128 patent is attached hereto as Exhibit D.

33.     In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the '128 patent is listed in the Orange Book for Xtandi® 80 mg tablets.

34.     Pursuant to an agreement, as amended, entered into between API, AUS, Medivation, Inc., and Medivation Prostate Therapeutics, Inc., API was granted an exclusive license to the Xtandi® patents.

35.     Pursuant to an agreement, as amended, entered into between API and AUS, AUS was granted a sublicense to the Xtandi® patents.

36.     Pursuant to an agreement entered into between AUS and APUS, APUS was granted a sublicense to the Xtandi® patents.

37.     On September 28, 2016, Pfizer Inc. acquired Medivation, Inc. and its wholly owned subsidiary Medivation Prostate Therapeutics, Inc.

38.     On August 28, 2017, Medivation, Inc. filed a Certificate of Conversion with the Delaware Secretary of State, in which Medivation, Inc. converted from a corporation to a limited liability company and changed its name to Medivation LLC.

39.     On August 28, 2017, Medivation Prostate Therapeutics, Inc. filed a Certificate of Conversion with the Delaware Secretary of State, in which Medivation Prostate Therapeutics, Inc. converted from a corporation to a limited liability company and changed its name to Medivation Prostate Therapeutics LLC.

## CLAIMS FOR RELIEF – PATENT INFRINGEMENT

40.     By a letter dated March 4, 2026 (the "DRL Notice Letter"), DRL advised APUS, API, and MPT that it had submitted ANDA No. 221187 to the FDA seeking approval to manufacture, use, or sell enzalutamide 40 mg and 80 mg tablets ("DRL's Generic Products") prior

to the expiration of the '689, '357, and '128 patents. The '628 patent will expire after the '689, '357, and '128 patents.

41.     On information and belief, DRL submitted ANDA No. 221187 to the FDA under § 505(j) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), seeking approval to engage in the commercial manufacture, use, and sale of DRL's Generic Products as generic versions of Xtandi® 40 mg and 80 mg tablets.

42.     On information and belief, ANDA No. 221187 seeks FDA approval of DRL's Generic Products for the indications of treatment of castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

43.     The DRL Notice Letter also advised APUS, API, and MPT that DRL's ANDA submission included a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) that, in DRL's opinion, the claims of the '689, '357, and '128 patents are invalid, unenforceable, and/or not infringed.

44.     The DRL Notice Letter does not allege invalidity under 35 U.S.C. §§ 101, 102, 103, or 112, or unenforceability of any claim of the '689, '357, or '128 patents.

45.     By not identifying invalidity defenses under 35 U.S.C. §§ 101, 102, 103, or 112, or unenforceability defenses for the '689, '357, and '128 patents in the DRL Notice Letter, DRL admits the claims of the '689, '357, and '128 patents are valid under 35 U.S.C. §§ 101, 102, 103, and 112, and are enforceable.

46.     There is an actual, real, immediate, and justiciable controversy between Plaintiffs and DRL regarding the infringement, validity, and enforceability of the Xtandi® patents.

47.     Plaintiffs commenced this action within 45 days of receiving the DRL Notice Letter pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

## COUNT I
### (Infringement of the '689 Patent)

48. Plaintiffs incorporate each of the preceding paragraphs 1 to 47 as if fully set forth herein.

49. By submitting ANDA No. 221187 to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of DRL's Generic Products throughout the United States, including New Jersey, prior to expiration of the '689 patent, DRL committed an act of infringement of the '689 patent under 35 U.S.C. § 271(e)(2)(A).

50. The '689 patent claims, *inter alia*, pharmaceutical compositions of enzalutamide. Claim 1 recites "a pharmaceutical composition comprising a solid dispersion consisting essentially of amorphous enzalutamide and hydroxypropyl methylcellulose acetate succinate" ("HPMCAS"). Certain dependent claims specify that the formulation is a tablet.

51. The formulation of Xtandi® tablets, 40 and 80 mg, contains a pharmaceutical composition comprising a solid dispersion consisting essentially of amorphous enzalutamide and HPMCAS. The formulation of Xtandi® tablets, 40 and 80 mg, is covered by the '689 patent.

52. The DRL Notice Letter does not dispute that DRL's Generic Products are tablets, that those tablets contain a solid dispersion of amorphous enzalutamide and an excipient, or that those tablets contain HPMCAS.

53. On information and belief, DRL copied the claimed invention of the '689 patent.

54. On information and belief, DRL was not required to copy the claimed invention of the '689 patent or the Xtandi® tablets formulation.

55. On information and belief, DRL's Generic Products, if approved by the FDA, will contain a pharmaceutical composition comprising a solid dispersion consisting essentially of

11

amorphous enzalutamide and HPMCAS or an equivalent thereof, which will constitute infringement of claims of the '689 patent.

56. On information and belief, DRL's manufacture, use, sale, offer for sale, and/or importation into the United States of DRL's Generic Products prior to the expiration of the '689 patent, including any applicable exclusivities or extensions, will directly infringe the '689 patent under 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents. DRL will infringe one or more of the claims of the '689 patent.

57. On information and belief, DRL was aware of the existence of the '689 patent and its listing in the Orange Book as demonstrated by DRL's reference to the '689 patent in the DRL Notice Letter.

58. On information and belief, DRL knows or should know that its commercial manufacture, use, offer for sale, sale, and/or importation of DRL's Generic Products prior to patent expiry will infringe one or more claims of the '689 patent.

59. On information and belief, DRL's statement of the factual and legal bases for its opinions regarding non-infringement of the '689 patent is devoid of an objective good faith basis in either the facts or the law. This case is exceptional.

60. Plaintiffs will be substantially and irreparably harmed by the infringing activities described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## COUNT II
### (Infringement of the '628 Patent)

61.     Plaintiffs incorporate each of the preceding paragraphs 1 to 60 as if fully set forth herein.

62.     DRL, by sending and filing the DRL Notice Letter, has indicated its intent to engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of DRL's Generic Products prior to the expiration of the '689 patent, and therefore prior to the expiration of the '628 patent.

63.     On information and belief, DRL is aware of the '628 patent at least because of its listing in the Orange Book for Xtandi® tablets.

64.     The submission of DRL's ANDA seeking approval to engage in the commercial manufacture, use, offer to sell, or sale of DRL's Generic Products, prior to the expiration of the '628 patent, constitutes infringement of one or more of the claims of the '628 patent under 35 U.S.C. § 271(e)(2)(A).

65.     On information and belief, DRL intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of DRL's Generic Products with the proposed labeling immediately and imminently upon final approval of DRL's ANDA No. 221187.

66.     The '628 patent claims, *inter alia*, methods of treating prostate cancer in patients to whom rifampin is administered. Claim 1 recites a "method of treating prostate cancer in a patient to whom rifampin is administered, comprising co-administering to the patient a daily dose of 240 mg of enzalutamide."

67.     On information and belief, DRL's manufacture, use, sale, offer for sale, and/or importation into the United States of DRL's Generic Products prior to the expiration of the

13

'628 patent, including any applicable exclusivities or extensions, will actively induce infringement of at least Claim 1 of the '628 patent under 35 U.S.C. § 271(b). DRL will aid another in the infringement of one or more of the claims of the '628 patent.

68.     On information and belief, DRL's Generic Products will have instructions for use that substantially copy the instructions for Xtandi® tablets, which disclose and encourage the practice of all the elements of Claim 1 of the '628 patent. Upon information and belief, the proposed labeling for DRL's Generic Products will direct the use of DRL's Generic Products for the following indications: treatment of patients with castration-resistant prostate cancer, treatment of patients with metastatic castration-sensitive prostate cancer, and treatment of patients with non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis. On information and belief, the proposed labeling for DRL's Generic Products will identify rifampin as a strong CYP3A4 inducer that decreases plasma concentrations of enzalutamide and its active metabolite and direct the co-administration of DRL's Generic Products at a dose of 240 mg orally once daily in patients who are receiving rifampin.

69.     On information and belief, DRL's Generic Products, if approved by the FDA, will be prescribed and administered to human patients to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and/or non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis, who are also receiving rifampin, at a daily dose of 240 mg/day, which will constitute infringement of at least Claim 1 of the '628 patent.

70.     On information and belief, this directly infringing use will occur with DRL's specific intent and encouragement and will be a use that DRL knows or should know will occur.

71.     On information and belief, DRL copied the claimed invention of the '628 patent.

14

72.     On information and belief, DRL will actively induce, encourage, aid, and abet this prescription and administration, with knowledge and specific intent that this use will be in contravention of Plaintiffs' rights under the '628 patent.

73.     On information and belief, DRL's acts will be performed with knowledge of the '628 patent and with intent to encourage infringement prior to patent expiry.

74.     Plaintiffs will be substantially and irreparably harmed by the infringing activities described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## COUNT III
### (Declaratory Judgment of Infringement of the '628 Patent Under 35 U.S.C. § 271(b))

75.     Plaintiffs incorporate each of the preceding paragraphs 1 to 74 as if fully set forth herein.

76.     On information and belief, DRL intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of DRL's Generic Products with the proposed labeling immediately and imminently upon final approval of DRL's ANDA No. 221187 and prior to the expiration of the '628 patent. Therefore, a case or controversy exists between DRL and Plaintiffs as to infringement of the '628 patent.

77.     On information and belief, DRL is aware of the '628 patent at least because of its listing in the Orange Book for Xtandi® tablets.

78.     The '628 patent claims, *inter alia*, methods of treating prostate cancer in patients to whom rifampin is administered. Claim 1 recites a "method of treating prostate cancer in a patient to whom rifampin is administered, comprising co-administering to the patient a daily dose of 240 mg of enzalutamide."

79.     On information and belief, DRL's manufacture, use, sale, offer for sale, and/or importation into the United States of DRL's Generic Products prior to the expiration of the '628 patent, including any applicable exclusivities or extensions, will actively induce infringement of at least Claim 1 of the '628 patent under 35 U.S.C. § 271(b). DRL will aid another in the infringement of one or more of the claims of the '628 patent.

80.     On information and belief, DRL's Generic Products will have instructions for use that substantially copy the instructions for Xtandi® tablets, which disclose and encourage the practice of all the elements of Claim 1 of the '628 patent. Upon information and belief, the proposed labeling for DRL's Generic Products will direct the use of DRL's Generic Products for the following indications: treatment of patients with castration-resistant prostate cancer, treatment of patients with metastatic castration-sensitive prostate cancer, and treatment of patients with non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis. On information and belief, the proposed labeling for DRL's Generic Products will identify rifampin as a strong CYP3A4 inducer that decreases plasma concentrations of enzalutamide and its active metabolite and direct the co-administration of DRL's Generic Products at a dose of 240 mg orally once daily in patients who are receiving rifampin.

81.     On information and belief, DRL's Generic Products, if approved by the FDA, will be prescribed and administered to human patients to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and/or non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis, who are also receiving rifampin, at a daily dose of 240 mg/day, which will constitute infringement of at least Claim 1 of the '628 patent.

82.     On information and belief, this directly infringing use will occur with DRL's specific intent and encouragement and will be a use that DRL knows or should know will occur.

83.     On information and belief, DRL copied the claimed invention of the '628 patent.

84.     On information and belief, DRL will actively induce, encourage, aid, and abet this prescription and administration, with knowledge and specific intent that this use will be in contravention of Plaintiffs' rights under the '628 patent.

85.     On information and belief, DRL's acts will be performed with knowledge of the '628 patent and with intent to encourage infringement prior to patent expiry.

86.     Plaintiffs will be substantially and irreparably harmed by the infringing activities described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## COUNT IV
### (Infringement of the '357 Patent)

87.     Plaintiffs incorporate each of the preceding paragraphs 1 to 86 as if fully set forth herein.

88.     By submitting ANDA No. 221187 to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of DRL's Generic Products throughout the United States, including New Jersey, prior to expiration of the '357 patent, DRL committed an act of infringement of the '357 patent under 35 U.S.C. § 271(e)(2)(A).

89.     The '357 patent claims a method of treating prostate cancer comprising administering a pharmaceutical composition of enzalutamide. Claim 1 recites a "method of treating prostate cancer comprising administering to a patient in need thereof a tablet comprising a solid

17

dispersion comprising amorphous enzalutamide and hydroxypropyl methylcellulose acetate succinate."

90.    Xtandi® tablets, 40 and 80 mg, are tablets comprising a solid dispersion comprising amorphous enzalutamide and HPMCAS. Xtandi® tablets are indicated to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis. The use of Xtandi® tablets, 40 and 80 mg, is covered by the '357 patent.

91.    The DRL Notice Letter does not dispute that DRL's Generic Products are tablets, that those tablets contain a solid dispersion of amorphous enzalutamide and an excipient, that those tablets contain HPMCAS, or that those tablets will be used to treat prostate cancer.

92.    On information and belief, DRL's Generic Products, if approved by the FDA, will be tablets comprising a solid dispersion comprising amorphous enzalutamide and HPMCAS or an equivalent thereof.

93.    On information and belief, DRL's Generic Products, if approved by the FDA, will be prescribed and administered to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

94.    On information and belief, DRL's manufacture, use, sale, offer for sale, and/or importation into the United States of DRL's Generic Products prior to the expiration of the '357 patent, including any applicable exclusivities or extensions, will actively induce infringement of the '357 patent under 35 U.S.C. § 271(b) and will constitute contributory infringement of the '357 patent under 35 U.S.C. § 271(c). DRL will aid another in the infringement of Claim 1 of the '357 patent.

18

95. On information and belief, DRL was aware of the existence of the '357 patent and its listing in the Orange Book as demonstrated by DRL's reference to the '357 patent in the DRL Notice Letter.

96. On information and belief, DRL's Generic Products will have instructions for use that substantially copy the instructions for Xtandi® tablets, which encourage the practice of all the elements of Claim 1 of the '357 patent. Upon information and belief, the proposed labeling for DRL's Generic Products will direct the use of DRL's Generic Products for the following indications: treatment of patients with castration-resistant prostate cancer, treatment of patients with metastatic castration-sensitive prostate cancer, and treatment of patients with non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

97. On information and belief, DRL's Generic Products, if approved by the FDA, will be prescribed and administered to human patients to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and/or non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis, which will constitute infringement of Claim 1 of the '357 patent.

98. On information and belief, this directly infringing use will occur with DRL's specific intent and encouragement and will be a use that DRL knows or should know will occur.

99. On information and belief, DRL copied the claimed invention of the '357 patent.

100. On information and belief, DRL was not required to copy the claimed invention of the '357 patent or the Xtandi® tablets formulation.

101. On information and belief, DRL will actively induce, encourage, aid, and abet this prescription and administration, with knowledge and specific intent that this use will be in contravention of Plaintiffs' rights under the '357 patent.

102. On information and belief, DRL knows or should know DRL's Generic Products will be especially made or especially adapted for use in a manner that will constitute infringement of the '357 patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

103. On information and belief, DRL's acts will be performed with knowledge of the '357 patent and with intent to encourage infringement prior to patent expiry.

104. On information and belief, DRL's statement of the factual and legal bases for its opinions regarding non-infringement of the '357 patent is devoid of an objective good faith basis in either the facts or the law. This case is exceptional.

105. Plaintiffs will be substantially and irreparably harmed by the infringing activities described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## COUNT VI
**(Infringement of the '128 Patent)**

106. Plaintiffs incorporate each of the preceding paragraphs 1 to 105 as if fully set forth herein.

107. By submitting ANDA No. 221187 to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of DRL's Generic Products throughout the United States, including New Jersey, prior to expiration of the '128 patent, DRL committed an act of infringement of the '128 patent under 35 U.S.C. § 271(e)(2)(A).

108. The '128 patent claims, *inter alia*, methods of treating prostate cancer comprising administering a pharmaceutical composition of enzalutamide. For example, Claim 3 recites a "method of treating prostate cancer comprising: orally administering to a male human in need

thereof two tablets, wherein each of the two tablets comprises: (a) a spray-dried dispersion consisting essentially of 80 mg amorphous enzalutamide and 400 mg hydroxypropyl methylcellulose acetate succinate; and (b) one or more inactive excipients; wherein the amorphous enzalutamide remains amorphous following storage of the spray-dried dispersion at 40° C. and 75% relative humidity for one month."

109. Xtandi® tablets, 80 mg, are tablets comprising a spray-dried dispersion consisting essentially of 80 mg amorphous enzalutamide and 400 mg HPMCAS, and one or more inactive excipients, wherein the amorphous enzalutamide remains amorphous following storage of the spray-dried dispersion at 40° C. and 75% relative humidity for one month. Xtandi® tablets are indicated for oral administration to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis. The use of Xtandi® tablets, 80 mg, is covered by the '128 patent.

110. The DRL Notice Letter does not dispute that DRL's 80 mg Generic Products are tablets, that those tablets contain a solid dispersion of amorphous enzalutamide and an excipient, that those tablets contain HPMCAS, or that those tablets will be used orally to treat prostate cancer.

111. On information and belief, DRL's 80 mg Generic Products, if approved by the FDA, will be tablets comprising a spray-dried dispersion consisting essentially of 80 mg amorphous enzalutamide and 400 mg HPMCAS or an equivalent thereof, and one or more inactive excipients, wherein the amorphous enzalutamide remains amorphous following storage of the spray-dried dispersion at 40° C. and 75% relative humidity for one month.

112. On information and belief, DRL's 80 mg Generic Products, if approved by the FDA, will be prescribed and administered orally to male humans to treat castration-resistant

prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

113. On information and belief, DRL's manufacture, use, sale, offer for sale, and/or importation into the United States of DRL's 80 mg Generic Products prior to the expiration of the '128 patent, including any applicable exclusivities or extensions, will actively induce infringement of at least Claim 3 of the '128 patent under 35 U.S.C. § 271(b) and will constitute contributory infringement of at least Claim 3 of the '128 patent under 35 U.S.C. § 271(c). DRL will aid another in the infringement of one or more claims of the '128 patent.

114. On information and belief, DRL was aware of the existence of the '128 patent and its listing in the Orange Book as demonstrated by DRL's reference to the '128 patent in the DRL Notice Letter.

115. On information and belief, DRL's 80 mg Generic Products will have instructions for use that substantially copy the instructions for Xtandi® 80 mg tablets, which encourage the practice of all the elements of at least Claim 3 of the '128 patent. Upon information and belief, the proposed labeling for DRL's 80 mg Generic Products will direct the use of DRL's 80 mg Generic Products for the following indications: treatment of patients with castration-resistant prostate cancer, treatment of patients with metastatic castration-sensitive prostate cancer, and treatment of patients with non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

116. On information and belief, DRL's 80 mg Generic Products, if approved by the FDA, will be prescribed and administered to human patients to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and/or non-metastatic castration-sensitive

22

prostate cancer with biochemical recurrence at high risk for metastasis, which will constitute infringement of at least Claim 3 of the '128 patent.

117. On information and belief, this directly infringing use will occur with DRL's specific intent and encouragement and will be a use that DRL knows or should know will occur.

118. On information and belief, DRL copied the claimed invention of the '128 patent.

119. On information and belief, DRL was not required to copy the claimed invention of the '128 patent or the Xtandi® tablets formulation.

120. On information and belief, DRL will actively induce, encourage, aid, and abet this prescription and administration, with knowledge and specific intent that this use will be in contravention of Plaintiffs' rights under the '128 patent.

121. On information and belief, DRL knows or should know DRL's 80 mg Generic Products will be especially made or especially adapted for use in a manner that will constitute infringement of the '128 patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

122. On information and belief, DRL's acts will be performed with knowledge of the '128 patent and with intent to encourage infringement prior to patent expiry.

123. On information and belief, DRL's statement of the factual and legal bases for its opinions regarding non-infringement of the '128 patent is devoid of an objective good faith basis in either the facts or the law. This case is exceptional.

124. Plaintiffs will be substantially and irreparably harmed by the infringing activities described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.      A judgment that DRL has infringed one or more claims of United States Patent Nos. 11,839,689, 12,161,628, 12,502,357, and 12,447,128 by submitting and maintaining ANDA No. 221187 seeking FDA approval for the commercial manufacture, use, offer for sale, sale, and/or importation of DRL's Generic Products before the expiration of the patents under 35 U.S.C. § 271(e)(2)(A);

B.      A judgment (or declaration) that DRL's commercial manufacture, use, offer for sale, sale in, and/or importation into the United States of DRL's Generic Products will infringe one or more claims of United States Patent Nos. 11,839,689, 12,161,628, 12,502,357, and 12,447,128 under 35 U.S.C. §§ 271(a), (b) and/or (c);

C.      A permanent injunction under 35 U.S.C. §§ 271(e)(4)(B) and/or 283 restraining and enjoining DRL, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, from engaging in the commercial manufacture, use, offer for sale, sale in, and/or importation into the United States of DRL's Generic Products prior to the expiration date of United States Patent Nos. 11,839,689, 12,161,628, 12,502,357, and 12,447,128, inclusive of any extensions;

D.      An order under 35 U.S.C. § 271(e)(4)(A) that the effective date of any FDA approval of ANDA No. 221187 under Section 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)) shall be a date that is not earlier than the expiration date of United States Patent Nos. 11,839,689, 12,161,628, 12,502,357, and 12,447,128, inclusive of any extensions;

E.      A declaration that this case is "exceptional" under 35 U.S.C. § 285 and an award of attorney fees;

24

F.      An award of costs and expenses in this action; and

G.      Such other and further relief as the Court may deem just and proper.

Dated: April 17, 2026                          /s/Liza M. Walsh
                                               Liza M. Walsh
                                               Katelyn O'Reilly
                                               Christine P. Clark
OF COUNSEL:                                    WALSH PIZZI O'REILLY FALANGA LLP
                                               Three Gateway Center
Dominick A. Conde (*phv forthcoming*)          100 Mulberry Street, 15th Floor
William E. Solander  (*phv forthcoming*)       Newark, NJ 07102
Erin J.D. Austin                               (973) 757-1100
Whitney M. Howard  (*phv forthcoming*)
Alexis M. McJoynt                              *Attorneys for Plaintiffs*
VENABLE LLP
151 West 42nd Street
New York, NY 10036

## LOCAL RULE 11.2 CERTIFICATION

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending litigation in any court, administrative proceeding, or arbitration proceeding, nor are there any non-parties known to Plaintiffs that should be joined to this action.


Dated: April 17, 2026                           /s/Liza M. Walsh
                                                Liza M. Walsh
                                                Katelyn O'Reilly
                                                Christine P. Clark
                                                WALSH PIZZI O'REILLY FALANGA LLP
                                                Three Gateway Center
                                                100 Mulberry Street, 15th Floor
                                                Newark, NJ 07102
                                                (973) 757-1100

                                                OF COUNSEL:

                                                Dominick A. Conde (*phv forthcoming*)
                                                William E. Solander (*phv forthcoming*)
                                                Erin J.D. Austin
                                                Whitney M. Howard (*phv forthcoming*)
                                                Alexis M. McJoynt
                                                VENABLE LLP
                                                151 West 42nd Street
                                                New York, NY 10036

## <u>LOCAL RULE 201.1 CERTIFICATION</u>

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the Plaintiffs seek, *inter alia*, injunctive relief.


Dated: April 17, 2026

/s/ *Liza M. Walsh*
Liza M. Walsh
Katelyn O'Reilly
Christine P. Clark
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100


OF COUNSEL:
Dominick A. Conde (*phv forthcoming*)
William E. Solander (*phv forthcoming*)
Erin J.D. Austin
Whitney M. Howard (*phv forthcoming*)
Alexis M. McJoynt
VENABLE LLP
151 West 42nd Street
New York, NY 10036